## CHILDERS v. HANKINS.

### No. 5644.

Court of Appeal of Louisiana. Second Circuit.

April 1, 1938.

T. H. McGregor, of Alexandria, for appellant.

W. W. McDonald, of Shreveport, for appellee.

HAMITER, Judge.

A promissory note dated January 17, 1931, due six months after date, and being for the principal sum of $165, was made by one G. L. Reeves and delivered to George

T. McSween, the payee named therein. At the time of its delivery, the instrument carried the indorsement of W. N. Hankins. The sum of $15 was paid and credited on the note under date of January 2, 1933.

Subsequently, the aforementioned payee indorsed the instrument without · recourse and transferred it to J. E. Childers. On January 18, 1937, the named transferee filed this suit against indorser Hankins to recover judgment for the note's principal amount with interest, less the stated credit of $15. The maker was not joined in the action. Later the petition was amended, and judgment for 10 per cent. attorney's fees was prayed for.

Exceptions of no cause and no right of action were filed by defendant. On these being overruled, he answered admitting his indorsement of the note as an accommodation for the maker. However, he averred that plaintiff did not acquire the note in good faith,. in due course, or for a legal consideration, but that it was obtained, if at all, several years after maturity in payment of a gambling debt. In the alternative, he alleged payment of the instrument before acquisition by plaintiff.

During the trial of the case, held on March 25, 1937, plaintiff gave testimony concerning certain knowledge that he possessed of a bankruptcy proceeding involving defendant.

On April 8, 1937, defense counsel filed a plea in bar or of estoppel, predicated on the aforementioned testimony, in which it was asserted "that the actual knowledge of said bankruptcy proceedings herein attributable to plaintiff was had before defendant's discharge in bankruptcy, and in ample time for plaintiff to have properly presented and proved his claim in said proceeding." The prayer of the pleading was that the plea be sustained and plaintiff's demands rejected at his cost.

A written opinion was signed and filed on April 21, 1937, by the lamented and distinguished Hon. D. B. Samuel, then the judge of the trial court, in which he stated:

"In this cause, as the plaintiff had actual knowledge of the bankruptcy petition of defendant, a stay of proceedings will be granted until the period elapses in which the defendant could apply for a discharge. If a discharge has already been granted the Court will give the defendant a chance to show this, the case being reopened 'sua sponte' for that purpose."

Under authority of the reopening order, further trial of the controversy was had ·on May 4, 1937, with the named jurist presiding. Before his final decision in the case was announced, however, he departed this life.

Judgment was rendered on September 30, 1937, and signed and filed on October 5, 1937, by his successor, sustaining the plea of estoppel and rejecting the demands of plaintiff.

The party cast appealed.

In this court defendant has abandoned his exceptions of no cause and no right of action, and his counsel admits, as disclosed by the brief, that the defenses presented by the answer have not been substantiated.

The appeal concerns only the effect of the referred to bankruptcy proceeding, together with plaintiff's knowledge of its pendency, on the obligation sued on.

The following relevant testimony was given by plaintiff, under questioning of the city judge, during the original hearing:

"Q. It seems strange that you kept a note so long without making any effort to have it paid. In short, you have had it in your possession how long?

"A. (Witness hesitates)

"Q. Two and a half years?

"A. I had forgot about I had it. One reason I didn't use the note, after I got hold of this note,—about that time seems to me like Dr. Hankins took bankruptcy; and I didn't see where he listed this note, and I kept quiet until he got through with bankruptcy proceedings; then I took up this note.

"Q. Did he go in bankruptcy?

"A. Yes, sir.

"Q. And you say he didn't list this note?

"A. No, sir.

"Q. You knew he was going in bankruptcy?

"A. I read about it. After he didn't list my note, I just kept quiet. I don't know what year he went in bankruptcy. After I checked up on him and saw he didn't list that note I just kept quiet.

"Q. How did you check up on him?

"A. I read in the papers of it. I wasn't notified.

"Q. But you knew positively that he was going in bankruptcy?

"A. No. I read where he filed a petition in bankruptcy.

"Q. You had that knowledge?

"A. I read it in the paper."

At the second hearing a certified copy of defendant's discharge in bankruptcy was filed in evidence. This document discloses that defendant's discharge was ordered on June 27, 1934, and that his petition for adjudication was filed July 14, 1933. Plaintiff was again questioned, and he stated that he saw the bankruptcy notice in June or July of 1934, or some time in the middle of the summer; that it was seen by him a few days before he obtained the note; that it was a notice of defendant's discharge in bankruptcy; and that he was mistaken in saying at the former hearing that he saw "in the papers where Dr. Hankins had filed a petition in bankruptcy."

With reference to the date of plaintiff's acquisition of the note, Mr. McSween testified that he made the transfer some time in 1934. During the first trial, plaintiff stated that he bought the note "some time in 1934." Later, when questioned, he answered thus:

"Q. What time of year was it you bought this note?

"A. I don't remember; some time in the middle of the year.

"Q. In the summer time?

"A. Along in summer time; I don't remember the date I got the note."

Also, we find him giving the following testimony:

"Q. Now, in the middle of the summer of what year did you say you bought this note?

"A. 1934. I don't say it was in the middle of the summer; it was sometime in 1934.

"Q. About what time?

"A. I don't remember; what does the note say, you have got the note.

"Q. The note does not say.

"A. It was in 1934."

On the final hearing, he said that, "I didn't get the note until 1934, in the middle of the summer. I remember well when I got the note."

■ The law of bankruptcy, in so far as this case is concerned, appears to be that:

"A discharge does not release the bankrupt from debts which have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless the creditor had notice or actual knowledge of the proceedings in bankruptcy.

"In order for a debt not duly scheduled to be released by the discharge, the creditor must have had notice or actual knowledge of the proceedings in time to allow him to prove his claim and give him an equal opportunity with other creditors to participate in the administration of the estate and in the dividends declared."

7 Corpus Juris, verbo Bankruptcy, § 721.

The question therefore presented is: Did plaintiff have actual knowledge of the bankruptcy proceedings in time to permit his participation with other creditors in the proceeds of the bankrupt's estate? If he had no such timely knowledge, he is not barred from recovery herein; if otherwise, he cannot succeed in this cause.

■ A careful study of all of the testimony in the record convinces us that the newspaper notice which plaintiff saw pertained to the bankrupt's adjudication and commencement of the proceeding; and that the note was acquired by him after receiving that knowledge but within sufficient time to permit the making of proof of his claim and his benefitting from the distribution of the estate's proceeds. His testimony in the first instance, and at a time not suspicious, was that, "I read where he filed a petition in bankruptcy," and, "after I checked up on him and saw he didn't list that note, I just kept quiet." His later declaration that the notice which he saw concerned the bankrupt's discharge was given after the intervention of more than a month's delay.

■ Plaintiff complains of the sustaining of an objection to testimony during the second trial, which he sought to adduce for the purpose of showing that in 1935 an attorney representing him made demand on defendant for the payment of the note. In our opinion, the evidence was properly excluded, for it was irrelevant to the issue then being considered. The last hearing was permitted for the sole purpose of receiving evidence relating to the bankrupt's discharge.

We observe no error in the judgment, and it is affirmed.